UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

PATRICK CONCRETE CONSTRUCTORS, INC.,

          Plaintiff,

-vs-

LAYNE CHRISTENSEN COMPANY,

          Defendant.

**DECISION and ORDER
No. 6:16-cv-06208(MAT)**

---

**I. Introduction**

This is an action for breach of contract brought by Patrick Concrete Constructors, Inc. ("Patrick" or "Plaintiff") against Layne Christensen Company ("Layne" or "Defendant"). Plaintiff asserts two causes of action in the Complaint: (1) breach of a construction contract and the implied duty of good faith and fair dealing, and (2) *quantum meruit*. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1), based on the complete diversity of citizenship between the parties and the amount in controversy.

**II. Factual Background and Procedural History**

Plaintiff, a construction contractor specializing in structural concrete and flatwork, is a New York corporation with its principal place of business in Canandaigua, Ontario County, New York. Defendant, a general construction contractor, is a Delaware corporation with its principal place of business in The Woodlands, Montgomery County, Texas.

At some point prior to February 24, 2012, Defendant, as general contractor, entered into a contract with the Valley Joint Sewer Authority for the construction of the Athens Waste Water Treatment Plan in the Borough of Athens, Bradford County, Pennsylvania ("the Project"). Plaintiff, as subcontractor, and Defendant, as contractor, then entered into an agreement ("the Subcontract") effective February 24, 2012. Pursuant to the Subcontract, Plaintiff was to perform certain concrete work and other associated work in connection with the Project. The base amount of the Subcontract was $2,895,000.00. While the parties dispute the exact start- and end-dates required under the Subcontract for Plaintiff to complete its work, the Project as a whole was completed later than anticipated by any of the parties. Defendant was required to pay liquidated damages to the Valley Joint Sewer Authority as a result of the belated completion of the Project, although who was responsible for the delays and to what extent are disputed matters in this action.

According to Plaintiff, Defendant's acts and omissions in connection with the Project and Subcontract caused Plaintiff to sustain delay damages in the form of labor and materials escalation, loss of productivity, procurement and impact costs, field and home office overhead, idle equipment, inability to take on other work, lost profits, and interest. Defendant counters that Plaintiff failed to complete its work in a timely and workmanlike manner and that, in any event, Plaintiff's damages claims are barred by the terms of the Subcontract.

At some point prior to June 18, 2014, Plaintiff submitted a claim for damages to Defendant's bonding company, Travelers Casualty and Surety Company of America ("Travelers"). Travelers denied the claim by letter dated November 24, 2014. Plaintiff commenced this action on February 16, 2016, in New York State Supreme Court, Ontario County. Defendant filed a notice of removal in this Court on March 31, 2016.

Discovery was completed on June 29, 2018, and Defendant filed its summary judgment motion on August 15, 2018. Defendant indicates that, for purposes of the pending motion only, it does not seek judgment on Plaintiff's claim for the Subcontract balance. Defendant instead seeks dismissal of Plaintiff's claims for two categories of delay damages, namely, "Change Orders" and "Extra Costs." Plaintiff filed papers in opposition to the motion, and Defendant filed a reply. The matter was submitted without oral argument on October 11, 2018.

**III. Summary Judgment Standard**

Federal Rule of Civil Procedure ("F.R.C.P.") 56(c) states that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The court's role in determining a motion for summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine

issue for trial." *Id.* When considering a motion for summary judgment, the court must draw inferences from underlying facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

## IV. Choice of Law

"A federal trial court sitting in diversity jurisdiction must apply the law of the forum state to determine the choice-of-law." *Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 393 (2d Cir. 2001) (citing *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496-97 (1941); other citation omitted). The forum state here is New York.

As the New York Court of Appeals has observed, it is a "'deeply rooted' principle of New York contract law that parties 'may . . . contract as they wish' in the absence of 'some violation of law or transgression of a strong public policy[.]'" *2138747 Ontario, Inc. v. Samsung C & T Corp.*, 31 N.Y.3d 372, 377 (2018)(internal and other quotations omitted; ellipsis in original). "[W]hen a contract contains a choice-of-law provision, that provision 'may reasonably be read as . . . a substitute for the conflict-of-laws analysis that otherwise would determine what law to apply to disputes arising out of the contractual relationship.'" *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp.3d 430, 596 (S.D.N.Y. 2018) (quoting *Ministers & Missionaries Benefit Bd. v. Snow*, 26 N.Y.3d 466, 470 (2015); further quotation omitted). As a general rule, "New York law gives

full effect to parties' choice-of-law provisions[.]" *Krock v. Lipsay*, 97 F.3d 640, 645 (2d Cir. 1996) (citing *Woodling v. Garrett Corp.*, 813 F.2d 543, 551 (2d Cir. 1987)).

Here, the Subcontract specifies that the law of the "state where the Project is located" supplies the governing law. Pennsylvania is the location of the Project. Therefore, the Court will apply Pennsylvania's substantive contract law. *See*, *e.g.*, *Negri v. Friedman*, No. 1:14-CV-10233-GHW, 2017 WL 2389697, at *7 (S.D.N.Y. May 31, 2017) (where stock purchase agreement contained choice-of-law provision designating Nevada, district court sitting in New York applied Nevada law to plaintiff's breach of contract claims).

**V. Discussion**

    **A. Defendant's Arguments Regarding the "Extra Costs" and "Change Orders" Damages Sought in the First Cause of Action**

In Plaintiff's responses to Defendant's interrogatories, it indicated it was seeking damages for "Change Orders" in the amount of $681,740 and "Extra Costs" in the amount of $915,000. *See* Defendant's Statement of Facts ("Def's SOF") ¶ 6 (citation omitted). The "Change Orders" and "Extra Costs" are comprised of "Labor Costs" and "Equipment Rentals/Material Purchases." Defendant argus that, based on both a macro-level and micro-level analysis, the testimony of Plaintiff's president, John Bell ("Bell"), establishes that these damages categories are based on speculation and conjecture and that the amounts sought are entirely fabricated. Defendant also argues that summary judgment is warranted as to

these two damages categories because Plaintiff cannot establish that Defendant proximately caused any part of the damages sought.

Under Pennsylvania Law, entitlement to relief on a breach of contract claim requires the plaintiff to establish "'(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages.'" *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir.2003) (quoting *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. 1999)). "The central principle of the law regarding contractual damages is that the non-breaching party should be placed in the position he or she would have been in absent breach." *Oelschlegel v. Mut. Real Estate Inv. Tr.*, 633 A.2d 181, 184 (Pa. Super. 1993). "To prove damages, a plaintiff must give a factfinder evidence from which damages may be calculated to a "'reasonable certainty.'" *Id.* at 225–26 (quoting *ATACS Corp. v. Trans World Communications, Inc.*, 155 F.3d 659, 668 (3d Cir. 1998)). "At a minimum, reasonable certainty embraces a rough calculation that is not 'too speculative, vague or contingent' upon some unknown factor." *Id.* at 226 (quoting *ATACS Corp.*, 155 F.3d at 669 (further quotation omitted)). Accordingly, "[w]hile mathematical certainty is not required, the plaintiff must introduce sufficient facts upon which the jury can determine the amount of damages without conjecture." *Delahanty v. First Pennsylvania Bank, N.A.*, 464 A.2d 1243, 1257 (Pa. Super. 1983); *see also Rochez Bros., Inc. v. Rhoades*, 527 F.2d 891, 895 (3d Cir. 1975) ("Although the law does not command mathematical preciseness

from the evidence in finding damages, sufficient facts must be introduced so that a court can arrive at an intelligent estimate without speculation or conjecture."); *accord*, *e.g.*, *Ware*, 322 F.3d at 226.

At his deposition, Bell, Plaintiff's president, testified as follows regarding the amount of damages sought for "change orders":

> Q: After today's exercise, do you believe you're entitled to [$]681,740 under those items?
> A: No.
> Q: What amount [are] you entitled to?
> A: I don't know. I'd have to work it up.
> Q: So as of right now, with my one chance to depose you, the person on damages, you can't give me a figure that you're actually entitled to?
> A: No. We just ripped all these figures apart, so now I got to go back and refigure.

Def's SOF ¶ 10 (quotation omitted).

With regard to the amount of damages sought for "extra costs," Bell testified as follows:

> Q: Okay. Then you have – you total everything here, total of everything except for the Amount Due on Contract and Outstanding Change Order heading. So that [$]915[,000] basically added up everything under Extra Costs Not Submitted all the way down to Extra Equipment?
> A: Yes.
> Q: You're asking for [$]915[,000] in this. Do you believe that's actually what you're entitled to today?
> A: Well, like I said, we were – like you said, we have to do some adjustments here.
> Q: Okay. Adjustments downward, correct, sir?
> A: Yes.
> Q: Can you tell me today what you think you're actually entitled to?
> A: No.

Def's SOF ¶ 11 (quotation omitted).

Plaintiff confirmed that, before it was awarded the subcontract, it prepared an estimate outlining the costs it

-7-

expected to incur on the Project. However, Plaintiff does not have and has not produced its estimate. *See* Def's SOF ¶ 5. Without Plaintiff's estimate, there is no evidence from which a factfinder could determine whether Plaintiff actually incurred costs beyond those that it expected to incur under the Subcontract, absent Defendant's breach. *See Oelschlegel*, 633 A.2d at 184 (contract damages aim to place the plaintiff in "the position [it] would have been in absent breach").

At his deposition, Bell, Plaintiff's president, was questioned extensively and in detail about the evidence supporting the damages requested under "change orders" and "extra costs." However, Bell was unable to identify any payroll records, time cards, vendor invoices, or similar evidence to support these categories of damages. To support the "extra costs" and "change orders," Plaintiff did supply "invoices" and "T&Ms." However, upon questioning by Defendant's counsel, Plaintiff's president repeatedly was forced to admit that he essentially "made up" the amounts indicated on the "invoices" and "T&Ms." For instance, under the umbrella category of "Change Orders $681,740," the first-tier subcategory of damages is "Delay $442,620" and under that, the sub-sub category of damages if "Delay Start "$100,000." *See* Def's SOF ¶ 6. To support these damages, Plaintiff produced Invoice 1 and a supporting T&M for $100,000, which purports to represent the labor costs Plaintiff incurred for four workers who sat idle during a period of delay at the beginning of the project. According to the T&M, a project manager and a superintendent sat idle for

992 hours, at a rate of $65/hour and $55/hour respectively, and two foremen sat idle for a total of 1,984 hours at a rate of $45/hour each. *See* Def's SOF ¶ 14. Plaintiff charged Defendant half of that total amount, or $100,000. However, at his deposition, Plaintiff's president conceded that he arbitrarily selected the 992 number of man-hours, did not consult any documents to substantiate the number of idle man-hours, and had no evidence-based estimate of the number of hours these workers actually sat idle because of Defendant's alleged actions or omissions. *See* Defendant's Memorandum of Law ("Def's Mem.") at 11-12 (quoting Def's SOF ¶ 15)).

In essence, Plaintiff concedes that it cannot provide the Court with an "intelligent estimate without speculation or conjecture," *Rochez Bros., Inc.*, 527 F.2d at 895, for either category of damages. Because Plaintiff has failed to make a factual showing sufficient to establish that the "extra costs" and "change orders" damages are capable of being proved with reasonable certainty, summary judgment dismissing these claims is appropriate. *See, e.g., LBL Skysystems (USA), Inc. v. APG-Am., Inc.*, 319 F. Supp.2d 515, 525 (E.D. Pa. 2004) (contractor doing work at airport was not entitled to lost settlement opportunity damages, following subcontractor's alleged breach of subcontract to install steel metal panel wall system, when breach required contractor to finish subcontract with its own resources, allegedly forcing it into disadvantageous settlement of other claims with owner in order to obtain working capital; there were number of other causes for disadvantageous settlement, including concern that owner might

-9-

become bankrupt, lost settlement opportunity was not reasonably foreseeable at time subcontract was entered into, and amount of damages could not be proved with reasonable certainty).

In the alternative, Defendant argues, Plaintiff has failed to show the existence of a genuine issue of material fact to be tried as to whether Defendant's alleged breach was the proximate cause of Plaintiff's "extra costs" and "change orders". It is well settled that under Pennsylvania law, "damages sought must be a proximate consequent of the breach, not merely remote or possible. . . ." *National Controls Corp. v. National Semiconductor Corp.*, 833 F.2d 491, 496 (3d Cir. 1987) ("To sustain a damages award, [the plaintiff] must have provided sufficient evidence from which the jury could have found that its lost profits were proximately caused by the defendant."); *see also*, *e.g.*, *Advent Sys. Limited v. Unisys Corp.*, 925 F.2d 670, 681 (3d Cir. 1991) ("*National Controls*[, *supra*,] emphasizes the need for evidence sufficiently concrete to provide a reasonable degree of certainty that the verdict is more than the result of a lottery or emotional reaction."). "The element of causation defines the range of socially and economically desirable recovery and requires not only '"but-for" causation in fact' but also 'that the conduct be a "substantial factor" in bringing about the harm.'" *National Controls Corp.*, 833 F.2d at 496 (quoting *Klages v. General Ordnance Equip. Co.*, 367 A.2d 304, 313 (Pa. Super. 1976)). In cases where multiple factors caused a loss "[t]he burden is on the plaintiff to establish proximate cause between breach and damage and if the loss caused by breach cannot

be isolated from that attributable to other factors, no damages may be awarded." *S.J. Groves & Sons Co. v. Warner Co.*, 576 F.2d 524 (3d Cir. 1978) (citing *Lichter v. Mellon-Stuart Co.*, 305 F.2d 216 (3d Cir. 1962)); *see also Nat'l Controls Corp.*, 833 F.2d at 496 ("Where the losses cannot be allocated between those caused by the defendant's breach and those not, an entire claim may be rejected.") (citation omitted).

Here, Plaintiff asserts that Defendant breached the Subcontract by delaying the Project, and that Defendant's delay caused it to sustain damages. However, Plaintiff has admitted that Defendant was not responsible for all of the delay, and that Plaintiff and its reinforcing bar subcontractor contributed to the delay as well. *See* Def's SOF ¶ 61. Because, by Plaintiff's own admission, it contributed to the damage-causing delays, it is required to allocate the amount of delay and resultant damages between, at a minimum, itself and Defendant. *See, e.g., Net Const., Inc. v. C & C Rehab & Const., Inc.*, 256 F. Supp.2d 350, 355 (E.D. Pa. 2003) ("Net bears the burden of demonstrating a reasonable allocation of its increased costs as a result of delays of the construction project caused by C & C.").

Plaintiff's damages model, nevertheless, assigns 100 percent of the delay, and therefore 100 percent of the damages, to Defendant. *See* Def's SOF ¶ 63. Specifically, Plaintiff has not identified "extra costs" and "change orders" damages that were caused by delay attributable solely to Defendant's actions or omissions regarding the Subcontract. Moreover, it is apparent,

based on Bell's deposition testimony, that Plaintiff has no way to reasonably ascertain or even estimate how to allocate causation. *See* Def's MOL at 10-26 (quoting Deposition of John Bell ("Bell Dep.") & Def's SOF; citations to record omited), Accordingly, the Court finds summary judgment must be awarded to Defendant as to the "extra costs" and "change orders" categories of damages. *See Net Const., Inc.*, 256 F. Supp.2d at 355 (holding that subcontractor on federal construction project was not entitled to recover damages for lost productivity as result of delays for which general contractor was responsible, where subcontractor failed to distinguish losses suffered as result of delays by contractor from losses that it might have suffered because of its own performance problems, weather, unsuitable soils, or existence of asbestos at site); *see also PharmaNetics, Inc. v. Aventis Pharm., Inc.*, No. 5:03-CV-817-FL(2), 2005 WL 8159274, at *17 (E.D.N.C. Mar. 9, 2005) (where plaintiff alleging breach of certain contractual provision could not provide evidence of damages resulting specifically from breach of that provision, apart from damages caused due to other actions of defendant, such as failure to provide sales leads, summary judgment was awarded to defendant as to that contractual provision) (citing *S.J. Groves & Sons Co.*, 576 F.2d at 525).

## C. Plaintiff's *Quantum Meruit* Is Foreclosed by the Existence of a Written Contract Between the Parties

"*Quantum meruit* is a quasi-contractual remedy in which a contract is implied-in-law under a theory of unjust enrichment; the

contract is one that is implied in law, and 'not an actual contract at all.'" *Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989, 998 (3d Cir. 1987) (quoting *Ragnar Benson, Inc. v. Bethel Mart Assocs.*, 454 A.2d 599, 603 (Pa. Super. 1982)). Under Pennsylvania law, "the quasi-contractual doctrine of unjust enrichment [is] inapplicable when the relationship between the parties is founded on a written agreement or express contract." *Benefit Trust Life Ins. Co. v. Union Nat. Bank*, 776 F.2d 1174, 1177 (3d Cir. 1985) (quoting *Schott v. Westinghouse Elec. Corp.*, 436 Pa. 279, 291 (1969)). "Where an express contract governs the relationship of the parties, a party's recovery is limited to the measure provided in the express contract; and where the contract 'fixes the value of the services involved,' there can be no recovery under a quantum meruit theory." *Hershey Foods Corp.*, 828 F.2d at 999 (quoting *Murphy v. Haws & Burke*, 344 A.2d 543, 546 (Pa. Super. 1975) (where an implicit contract existed between attorney and law firm, no separate *quantum meruit* recovery could be obtained)).

Here, as Plaintiff acknowledges in its opposing memorandum of law, the existence of an express contract, the Subcontract, bars recovery under a theory of *quantum meruit*. Accordingly, Defendant is entitled to summary judgment dismissing the *quantum meruit* cause of action.

**VI. Conclusion**

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted to the extent that Plaintiff's damage claims for purported "change orders" and "extra costs" are dismissed, and

-13-

Plaintiff's *quantum meruit* claim (the second cause of action in the Complaint) is dismissed. The Complaint's first cause of action, and all categories of damages sought by Plaintiff, apart from those specifically addressed in this Decision and Order, remain pending.

**SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:   December 12, 2018
         Rochester, New York